IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Diane R. Humphreys,**<br><br>Plaintiff,<br><br>**v.**<br><br>**Carolyn L. Colvin,**<br>**Acting Commissioner of Social**<br>**Security,**<br><br>Defendant. | CASE NO. 12cv328 W (PCL)<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE:**<br><br>**GRANTING in part PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. 15); and**<br><br>**DENYING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT (Doc. 16.)** |

## I.

## INTRODUCTION

On February 8, 2012, Plaintiff filed this action pursuant to the Social Security Act, 42 U.S.C. § 405(g). (Doc. 1.) Plaintiff seeks judicial review of Acting Commissioner of Social Security's final decision denying Plaintiff's application for disability insurance benefits. (Doc. 1.) Plaintiff filed a Motion for Summary Judgment (Doc. 15), and Defendant filed a Cross-Motion for Summary Judgment (Doc. 16). The Honorable Thomas J. Whelan referred the matter to undersigned judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After

a thorough review of all pleadings and the entire record submitted in this matter, this Court recommends that Plaintiff's Motion for Summary Judgment be **GRANTED IN PART** and that Defendant's Cross-Motion for Summary Judgment be **DENIED**.

## II.

## BACKGROUND

### A.   Procedural Background

Plaintiff Diane R. Humphreys filed an application for Disability Insurance Benefits and Supplemental Security Income on October 6, 2006, alleging an inability to work beginning February 1, 2003. (A.R. 16-18, 136.) The matter was initially heard by the ALJ on April 23, 2008 (A.R.  104-130), resulting in an unfavorable decision on February 2, 2009 (A.R. 133-140). Plaintiff appealed the decision, and the Appeals Council issued an Order Remanding Case on June 18, 2009. (A.R. 141-144.)

A second hearing was held by the same ALJ on July 9, 2010 (A.R. 85-103), and the remanded claim was denied on July 19, 2010 (A.R. 145-160). The denial was appealed, and the Appeals Council again remanded the case and directed that a different ALJ hear the case. (A.R. 161-164.) Plaintiff appeared and testified at this hearing held on April 28, 2011 before ALJ Norman R. Buls. On June 21, 2011, ALJ Buls issued an unfavorable decision. (A.R. 13-30.) In his decision, the ALJ made the following findings:

1.  The claimant has not engaged in substantial gainful activity since October 6, 2006, the application date.

2.  The claimant has the following severe impairments: bipolar disorder and methamphetamine dependence, in remission.

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4.  The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: claimant is unable to sustain concentration or attention for prolonged periods, maintain a

normal schedule of attendance, sustain an ordinary work routine, work in conjunction with others, interact with co-workers, supervisors or the public, or respond appropriately to changes in work routine.

5.   The claimant is unable to perform any past relevant work.

6.   The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above.

7.   Considering the claimant's age, education, work experience, and residual functional capacity based on all the impairments, including the substance use disorder, there are no jobs that exist in significant numbers in the national economy that claimant can perform.

8.   If the claimant stopped the substance abuse, the remaining limitations would not cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would not have a severe impairment or combination of impairments.

9.   Because the claimant would not be disabled if she stopped the substance use, the claimant's substance use disorder is a contributing factor material to the determination of disability. Thus, the claimant has not been under a disability, as defined in the Social Security Act, from October 6, 2006, through the date of this decision.

(A.R. 16-26.)

Plaintiff appealed, but the Appeals Council issued an unfavorable decision on December 14, 2011, making the ALJ's June 2011 decision the final determination of the Commissioner of Social Security for purposes of judicial review. (A.R. 1-5.) Plaintiff then filed this action on February 8, 2012. (Doc. 1.) Defendant answered on May 21, 2013. (Doc. 10.) On October 21, 2013, Plaintiff filed a Motion for Summary Judgment (Doc. 15), and Defendant filed a Cross-Motion for Summary Judgment in Opposition to Plaintiff's Motion for Summary Judgment (Doc. 21).

This Report and Recommendation addresses both motions pending before this Court.

## III.

## ADMINISTRATIVE RECORD

Plaintiff is a 48-year old female with the following alleged impairments: bipolar disorder, depression, and stress. (A.R. 590.) She was 40 years old at the

12cv328 W (PCL)

onset date of her alleged disability. (A.R. 22.) She is five feet, four inches tall and weighs 156 pounds. (A.R. 598.) She previously worked for a group home as a certified nursing assistant in 2001 and for a construction cleaning business as a part-time cleaner in 2007. (A.R. 109-110.)

**A.  Medical Evidence**

1. Treating Physician Dr. Bushra Ahmad, MD

Plaintiff has received regular treatment from Dr. Bushra Ahmad, a psychiatrist at the Imperial County Behavioral Health Services clinic since 2006. (A.R. 560.) Dr. Ahmad diagnosed her with major depressive disorder that is recurrent and severe, but without psychotic features, and she was placed on an antidepressant. (A.R. 560.)  At first, Dr. Ahmad described her as being angry and irritable, hyperactive, talkative, and hypersexual. (A.R. 560.) A few months later, Dr. Ahmad described her as being "mildly depressed but peaceful." (A.R. 592, 606.) Dr. Ahmad stated that she had been sober for more than a year but that she is unable to work due to her depression. (A.R. 592.) Plaintiff's prescriptions included Wellbutrin, an antidepressant, and Rozerem, which enables Plaintiff to "sleep better." (A.R. 606.) Dr. Ahmad remarked that Plaintiff had "ok" compliance with the prescribed treatment but that she had a tendency to stop the medication due to their side effects. (A.R. 606.) On January 12, 2007, Dr. Ahmad described her as being depressed, easily stressed out, very anxious around other people and in crowds, and having poor sleep, memory, and concentration. (A.R. 607.) Dr. Ahmad added Prozac to her prescribed medications and stated that she again had "ok" compliance with her drug treatment regimen. (A.R. 607.) Her prognosis did not change at the January 31, 2007 evaluation. (A.R. 608.) On February 28, 2007, Plaintiff reported being very depressed, sleeping all day, having poor concentration, crying, and having a poor appetite. (A.R. 609.) She reported that she forgot to take her Prozac for a week because she did not eat on time. (A.R. 609.) In a March 22, 2007 evaluation, Plaintiff was listed as having major depression and

bipolar disorder and being unable to work a regular job. (A.R. 617-619.)

Her condition did not change at the March 27, 2007 check-up, with Dr. Ahmad adding Neurontin, a mood stabilizer, to Plaintiff's drug regimen. (A.R. 610.) Plaintiff met again with Dr. Ahmad on April 24, 2007 and June 4, 2007, without a change in her condition. (A.R. 611, 612.) During this time, Plaintiff stated that she did not comply with her Prozac dosages very well as she forgot to take it. (A.R. 611, 612.) On Plaintiff's February 25, 2008 progress report, Dr. Ahmad noted that Plaintiff had not been compliant with her medical appointments or her medications as she had not come in for a check-up since September 2007. (A.R. 614.) Plaintiff complained that the medications were making her feel even worse, that she felt depressed, and had no appetite. (A.R. 614.) Based on this evaluation, Dr. Ahmad discontinued her previous drug regimen and instead added Lexapro for her depression. (A.R. 614.)  However, at her April 28, 2008 evaluation, Plaintiff was still not doing well and was not compliant with her medications. (A.R. 614.) According to Dr. Ahmad, Plaintiff still remained sober from abusing drugs such as methamphetamine during the times he treated her from 2006 to 2008. (A.R. 613.)

After a period of absence from seeing Dr. Ahmad at the Imperial County Behavioral Health Services clinic, Plaintiff was readmitted on February 25, 2010. (A.R. 628.) Dr. Ahmad noted that Plaintiff stopped coming because she was still using meth and that her medications were not working well. (A.R. 628.) Dr. Ahmad noted that her last reported use of meth was on September 7, 2009. (A.R. 628.) Plaintiff reported having severe mood swings and being depressed. (A.R. 628.) She was placed on Fluoxetine, an antidepressant, and Geodon, a medication used to treat the manic symptoms of bipolar disorder. (A.R. 628.) On March 28, 2010, Plaintiff reported that she did not take the prescribed medications. (A.R. 636.) In addition to her depression and mood swings, she reported that she had been hitting and punching things. (A.R. 636.) On March 25, 2010, she still had the same up and down mood with poor medication compliance. (A.R. 640.) She

reported fair medication compliance with Geodon at her April 1, 2010 evaluation but still reported the same symptoms of depression and mood swings. (A.R. 644.) On June 3, 2010, Plaintiff reported restlessness, anxiety, sleeplessness, poor concentration but better control of her mood swings and no anger or irritability. (A.R. 653.) She was continued on Geodon for treating her bipolar disorder and was prescribed Propranolol for her anxiety. (A.R. 653.) On June 17, 2010, Plaintiff reported not liking Propranolol as it caused more anxiety. (A.R. 658.) Reporting fair compliance with Geodon, she nevertheless continued to have the following impairments: poor socialization, isolation, irritability, depression, mood swings, and occupational problems. (A.R. 658.) Finally, in a mental impairment questionnaire dated March 21, 2011, Dr. Ahmad reported that she had Bipolar I disorder, that she was sober since September 2009, and that her constant worries, poor attention and concentration, her tiredness, and functional impairments would make it difficult for her to maintain a regular job. (A.R. 663.)

2. Treating psychologist Stephen Papaleo

Plaintiff began seeing psychologist Stephen Papaleo in early 2010. (A.R. 630.) Dr. Papaleo noted that Plaintiff received scores on the administered psychological tests that were consistent with severe depression and bipolar disorder. (A.R. 630.) On March 9, 2010, Dr. Papaleo noted that Plaintiff was highly motivated and compliant with treatment despite her depression. (A.R. 632.) On March 16, 2010, Plaintiff reported she was in crisis mode with increased depression, agitation, and irritability. (A.R. 634, 635.) Two days later, Plaintiff reported that she had been hitting and punching things, had poor sleep, poor concentration, anxiety, and depression. (A.R. 636.) Dr. Papaleo noted that she had poor compliance with her medications. (A.R. 636.) Dr. Papaleo noted that Plaintiff had a recent medication change as she discontinued using Prozac and Geodon and started using Divalproex to treat her bipolar disorder. (A.R. 638.) On March 25, 2010, Dr. Papaleo noted that Plaintiff had to discontinue using Divalproex and she resumed Geodon and

12cv328 W (PCL)

Hydroxyzine for her anxiety. (A.R. 642.) She reported an improved status with her depression from the last session, with increases in energy, interaction, animation, and affective range/intensity. (A.R. 642.) This improved pattern continued in her April 13, April 20, and June 1, 2010 progress reports. (A.R. 646, 647, 650.)  On June 8, 2010, Dr. Papaleo summarized her mental status as follows: "While patient has made clear progress, she remains fragile and at significant risk for relapse/decompensation." (A.R. 655.)

3. Consultive Psychologist C. Valette, Ph.D.

On September 26, 2009, Dr. Valettek, a clinical psychologist, evaluated Plaintiff for the Department of Social Services, Disability Evaluation Department. (A.R. 620.) Dr. Valette noted that Plaintiff received "outpatient treatment with Dr. Ahmad two years ago 'or so'" but that she was not currently in treatment. (A.R. 620.) Plaintiff told Dr. Valette that she had last used methamphetamine five months ago and that she was not currently taking medications. (A.R. 620.)

Dr. Valette pointed out that "claimant was not putting forth good effort into our evaluation. Her very poor scores are inconsistent with her adequate presentation and reported functional abilities." (A.R. 620.) Dr. Valette noted organized thought processes, no psychotic behavior, normal speech, good memory of her personal history, and adequate focus and concentration. (A.R. 621.) Plaintiff reported "that she is able to wash dishes, vacuum, sweep, do laundry, cook, and shop [but that] she cannot do these things for any length of time as she cannot stand or sit for very long." (A.R. 621.)

On the Folstein Mental Status Examination, the Bender Gestalt II, the Wechsler Adult Intelligence Scale-III, and the Wechsler Memory Scale III, Plaintiff's scores were determined to be invalid due to poor effort on her part. (A.R. 621.) Her diagnosis was the following: "Rule out malingering. In light of her adequate presentation and reported functional abilities, it is highly likely that she is intellectually functioning in the average range. It is highly likely that her memory

is functioning consistent with intellectual functioning, average range. It is highly likely that there are no mental restrictions regarding this claimant and that she is capable of handling her own finances." (A.R. 622.)

**B.  Administrative Hearings**

April 23, 2008 Hearing

Before ALJ Lauren R. Mathon on April 23, 2008, Plaintiff testified regarding her work history, medical conditions, and consequent limitations. (A.R. 109-130.) Plaintiff stated that she was licensed as a certified nursing assistant, with her last employment in that field in 2001. (A.R. 109.) She then worked part-time for a commercial building cleaning business until March of 2007. (A.R. 110-111.) Finally, she worked seven or eight days in January of 2008. (A.R. 112.) At that point, Plaintiff testified that she could not find a job and that she felt stressed, depressed, and couldn't focus. (A.R. 113.)

Plaintiff testified that she had been clean and sober from methamphetamine usage for about eight months at the time of the hearing. (A.R. 115.) She stated that she used meth a couple of times in 2007, which was a relapse as she had been free from substance abuse starting in January of 2006. (A.R. 116, 126.) She stated that she stopped seeing her psychiatrist in June of 2007 and discontinued using her medications. (A.R. 124.) Realizing that she was making herself feel worse, she started receiving psychiatric treatment again in March of 2008. (A.R. 124.)

July 9, 2010 Hearing

Before ALJ Lauren R. Mathon on July 9, 2010, Plaintiff testified regarding her work history, medical conditions, and consequent limitations. (A.R. 85-103.) Plaintiff testified that she had another brief drug relapse in late 2008 or early 2009. (A.R. 93-94.) She stated that she had been living in a women's shelter, where she had to do chores such as cleaning the kitchen and watering the yard. (A.R. 95.) She described the severe depression she daily faced, including the occasional thoughts of suicide. (A.R. 95.) She stated that she had been clean and sober since September

12cv328 W (PCL)

2009 and that she started receiving psychiatric treatment again and taking medications for her symptoms in September 2010. (A.R. 97-98.) She stated that she drinks alcohol infrequently. (A.R. 98.) She explained that the medications she is taking help her to some extent but that they make her feel drowsy. (A.R. 99-100.)

April 28, 2011 Hearing

Before ALJ Norman R. Buls on April 28, 2011, Plaintiff testified regarding her work history, medical conditions, and consequent limitations. (A.R. 31-48.) She testified that she last used methamphetamine on September 9, 2009. (A.R. 41.) She could not remember why she had previously told her psychiatrist two weeks after September 9, 2009 that her last previous use was five months ago. (A.R. 41-42.) She testified that she last worked in 2007. (A.R. 39.) Her reasons why she could not work were her inability to focus and concentrate stemming from her uncontrollable anxiety and her bipolar disorder. (A.R. 42.) She stated that she usually gets up at 1:00 in the afternoon as she does not want to face the world. (A.R. 44.) During the day, Plaintiff explained that she sits in front of the television and spaces out, eats maybe once a day, occasionally cleans her house, does not have any hobbies, smokes cigarettes regularly, and prefers to isolate herself from the rest of the world. (A.R. 44-45.)

**C.  ALJ Decision**

The ALJ sought to determine whether Plaintiff was disabled under section 1614(a)(3)(A) of the Act. (A.R. 16.) The ALJ concluded that Plaintiff was under a disability, but that a substance abuse disorder was a contributing factor material to the determination of disability. (A.R. 17.) As such, the ALJ determined that Plaintiff was not disabled at any time from the date of application through the date of his decision. (Id.)

The ALJ found that Plaintiff had not engaged in substantial gainful activity since October 6, 2006, the application date. (A.R. 19.) The ALJ determined that

Plaintiff had bipolar disorder and methamphetamine dependence, in remission.
(A.R. 19.) Based on her impairments including the substance use disorder, the ALJ
found that Plaintiff had the residual functional capacity to perform a full range of
work at all exertional levels but with the following nonexertional limitations:
inabilities in sustaining concentration or attention for prolonged periods,
maintaining a normal schedule of attendance, sustaining an ordinary work routine,
working in conjunction with others, interacting with co-workers, supervisors, or
the public, and responding appropriately to changes in the work routine. (A.R. 20.)
The ALJ found that after Plaintiff used methamphetamine continuously from 2001
until 2006, Plaintiff entered rehabilitation and was then diagnosed with major
depressive disorder and methamphetamine dependence, in early remission. (A.R.
20.) The ALJ noted that Plaintiff was prescribed a number of different medications
but that Plaintiff had difficulties managing their side effects and did not report
significant progress with her symptoms. (A.R. 21.) The ALJ pointed out that
Plaintiff used meth "during 2007" and discontinued treatment in June 2007, and
with the exception of attending treatment for two months in 2008, did not continue
with receiving psychiatric treatment until 2010. (A.R. 21.) The ALJ stated that
Plaintiff reported a sharp increase in her symptoms when she was out of treatment
and a noticeable improvement in her symptoms when she was not using meth and
complying with her treatments. (A.R. 21.)

The ALJ gave considerable weight to Plaintiff's psychiatrist Dr. Ahmad's
2007 medical opinion that Plaintiff was impaired to the extent that she could not
work. (A.R. 21.) However, the ALJ stated the following: Dr. Ahmad's 2007
opinion "reflects claimant's level of impairment during a time that she was
admittedly still using methampetamine. Although Dr. Ahmad does not directly
separate the two issues, claimant's functional limitations at that time cannot be
separated from her substance abuse." (A.R. 21.) The ALJ similarly noted that "[i]n
May 2010 and March 2011, Dr. Ahmad opined claimant's limitations were more or

1   less as they had been in 2007." (A.R. 21.) However, the ALJ did not give

2   considerable weight to the May 2010 and March 2011 evaluations because they

3   reflected "only several months of sustained sobriety and compliance with

4   treatment." (A.R. 21.) The ALJ found that the limitations were not corroborated by

5   the record "absent substance abuse." (A.R. 22.) The ALJ concluded, "Dr. Ahmad's

6   2011 opinion is given limited weight as claimant's last documented treatment was

7   in June 2006 and there is therefore no way to evaluate whether the March 2011

8   opinion is a current assessment or simply based on prior opinions given." (A.R.

9   22.) "[T]hese opinions are limited in their usefulness as the 2010 opinion was

10  offered very soon after claimant stopped regular methamphetamine use and may

11  still reflect the after affects of her drug use and the 2011 opinion is not

12  accompanied by any co-occurring treatment records." (A.R. 24.)

13      Although Plaintiff was deemed unable to perform any past relevant work or

14  any other job in the national economy, the ALJ determined that if Plaintiff

15  "stopped the substance use, the remaining limitations would not cause more than a

16  minimal impact on the claimant's ability to perform basic work activities [and she]

17  would not have a severe impairment or combination of impairments." (A.R. 23.)

18  He based his conclusion on the evidentiary record as a whole and on the opinion of

19  Dr. C. Valette, Ph.D., the consultive psychologist. (A.R. 24-25.) Dr. Valette

20  evaluated Plaintiff in September 2009. (A.R. 24.) The ALJ pointed out that

21  Plaintiff reported to Dr. Valette that her last usage of meth was in April 2009,

22  which is inconsistent with her later treatment records showing that she attained

23  sobriety in September 2009. (A.R. 24.) The ALJ also pointed out that Dr. Valette

24  "was of the opinion that the psychometric testing performed during the exam was

25  likely invalid due to malingering and that claimant's reported level of functional

26  abilities and adequate presentation was more indicative of an average range of

27  intellectual functioning." (A.R. 24.) The ALJ further stated that "Dr. Valette did

28  not offer a diagnosis and opined that claimant was not functionally limited by any

mental health impairment." (A.R. 24.) The ALJ qualified the opinion as in contrast
to the record showing Plaintiff's impairments and noted that Dr. Valette's "failure
to offer a diagnosis is likely due to her assessment that claimant was malingering
and claimant's lack of treatment or medication at the time of the interview." (A.R.
24.)  Based on this evidence, and Plaintiff's lack of credibility due to her ability "to
maintain employment for several months while using methamphetamine and not
receiving methal health treatment," the ALJ concluded that "[b]ecause the claimant
would not be disabled if she stopped the substance use, the claimant's substance
use disorder is a contributing factor material to the determination of disability" and
she is not disabled as defined by the Social Security Act. (A.R. 26.)

## IV.

## STANDARD OF REVIEW

To qualify for disability benefits under the Social Security Act, an applicant
must show that: (1) she suffers from a medically determinable impairment that can
be expected to result in death or that has lasted or can be expected to last for a
continuous period of twelve months or more, and (2) the impairment renders the
applicant incapable of performing the work that she previously performed or any
other substantially gainful employment that exists in the national economy. See 42
U.S.C.A. § 423 (d)(1)(A), (2)(A) (West 2004). An applicant must meet both
requirements to be "disabled." Id.

A. Sequential Evaluation of Impairments

The Social Security Regulations outline a five-step process to determine
whether an applicant is "disabled." The five steps are as follows: (1) Whether the
claimant is presently working in any substantial gainful activity.  If so, the claimant
is not disabled.  If not, the evaluation proceeds to step two. (2) Whether the
claimant's impairment is severe. If not, the claimant is not disabled.  If so, the
evaluation proceeds to step three.  (3) Whether the impairment meets or equals a
specific impairment listed in the Listing of Impairments.  If so, the claimant is

disabled.  If not, the evaluation proceeds to step four.  (4) Whether the claimant is able to do any work she has done in the past.  If so, the claimant is not disabled.  If not, the evaluation proceeds to step five. (5) Whether the claimant is able to do any other work. If not, the claimant is disabled.  Conversely, if the Commissioner can establish there are significant number of jobs in the national economy that the claimant can do, the claimant is not disabled. 20 CFR § 404.1520; see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

B.  Judicial Review

Sections 206(g) and 1631(c)(3) of the Social Security Act allow unsuccessful applicants to seek judicial review of the Commissioner's final agency decision. 42 U.S.C.A. §§ 405(g), 1383(c)(3). The scope of judicial review is limited.  The Commissioner's final decision should not be disturbed unless: (1) the ALJ's findings are based on legal error or (2) are not supported by substantial evidence in the record as a whole. Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Vasquez v. Astrue, 547 F.3d 1101, 1104 (9th Cir. 2008) (quoting Andrews, 53 F.3d at 1039). Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed. Id. (citation and quotations omitted).

Section 405(g) permits this Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C.A. § 405(g). This matter may

12cv328 W (PCL)

1   also be remanded to the Social Security Administration for further proceedings. Id.

2   Furthermore, "[a] decision of the ALJ will not be reversed for errors that are

3   harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

4                                      **V.**

5                               **DISCUSSION**

6          Plaintiff challenges the ALJ's determination that Plaintiff's substance use

7   disorder is a contributing factor material to the determination of disability. (Doc.

8   15, at 8.) Plaintiff argues that the ALJ failed to give the proper weight to his

9   treating physician Dr. Ahmad's medical opinion describing Plaintiff's level of

10  functionality and disability. (Doc. 15, at 9.) Plaintiff argues that the ALJ's

11  conclusion that Plaintiff would not be disabled if she stopped the substance use is

12  not based on substantial evidence and constitutes legal error. (Doc. 15, at 8-10.)

13  Defendant, on the other hand, argues that the ALJ properly analyzed the materiality

14  of Plaintiff's methamphetamine dependence in accordance with the Social Security

15  regulations in concluding that Plaintiff's meth use was a material factor

16  contributing to her mental dysfunction. (Doc. 16, at 3, 5.) Defendant further argues

17  that the ALJ provided a well-supported explanation using the record as a whole for

18  his decision to reject the medical source statement of Plaintiff's treating

19  psychiatrist, Dr. Ahmad, who indicated that Plaintiff was disabled. (Doc. 16, at 6.)

20         In determining whether a claimant's drug addiction is a contributing factor

21  material to the determination of a disability, the "key factor" an ALJ must examine

22  is whether the claimant would still be disabled if she stopped using illegal drugs.

23  20 C.F.R. § 416.935(b)(1). In making this determination, an ALJ must evaluate

24  which of the claimant's limitations would remain if she stopped using illegal drugs,

25  and whether any or all of those remaining limitations would be disabling. 20

26  C.F.R. § 416.935(b)(2). If the ALJ determines that the claimant's remaining

27  limitations would not be disabling, the ALJ "will find that [the claimant's] drug

28  addiction ... is a contributing factor material to the determination of disability." 20

C.F.R. § 416.935(b)(2)(i). The burden of proving that drug addiction was not a contributing factor material to the disability determination falls on the claimant, Parra v. Astrue, 481 F.3d 742, 748 (9th Cir. 2007), but "the ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding." Brueggemann v. Barnhart, 348 F.3d 689, 693 (8th Cir. 2003) (citation omitted).

In certain cases, a claimant's substance use and impairment may be closely related. See, e.g., Salazar v. Barnhart, 468 F.3d 615, 623 (10th Cir. 2006) (claimant's mental illness may account for that claimant's substance abuse); Kangail v. Barnhart, 454 F.3d 627, 629 (7th Cir. 2006) (claimant's mental illness can precipitate substance abuse as a means by which the claimant tries to self-medicate). Notably, the mere fact that substance abuse aggravates rather than medicates mental illness does not establish that the mental illness itself is not disabling. See Kangail, 454 F.3d at 629. Due to the difficulty inherent in separating the effect of mental illness on a claimant's functioning from the effect of substance use on that same claimant's functioning, courts have held that if the effect of a claimant's mental illness cannot be separated from the effects of substance abuse, the substance abuse is not a contributing factor material to the disability determination. See, e.g., Kluesner v. Astrue, 607 F.3d 533, 537 (8th Cir. 2010) ("In other words, on the materiality of his marijuana use, a tie would go to [claimant]."); Salazar, 468 F.3d at 622-24. If, however, the claimant's physician concludes that the claimant's mental illness is secondary to the primary problem of substance abuse, the record supports a finding that the claimant is not disabled. See, e.g., Vester v. Barnhart, 416 F.3d 886, 891 (8th Cir. 2005) ("After considering all of the evidence under the substantial evidence standard, we are satisfied that the ALJ [ ] untangled [claimant's] history of alcoholism and mental illness with sufficient clarity and detail to support the finding that she is not disabled apart from her alcoholism."). The Ninth Circuit has stressed that courts must not "fail[ ]

1   to distinguish between substance abuse contributing to the disability and *the*
2   *disability remaining after the claimant stopped using drugs or alcohol*." <u>Sousa v.</u>
3   <u>Callahan</u>, 143 F.3d 1240, 1245 (9th Cir. 1998). That is, "[j]ust because substance
4   abuse contributes to a disability does not mean that when the substance abuse ends,
5   the disability will too." <u>Id.</u>

6        Here, the ALJ did not support his finding that a substance abuse disorder was a
7   contributing factor material to the determination of disability with substantial
8   evidence. None of Plaintiff's treating physicians opined that Plaintiff's depression
9   or bipolar disorder was secondary to Plaintiff's methamphetamine use disorder. In
10  an attempt to untangle Plaintiff's substance use disorder from her mental illness,
11  the ALJ mischaracterized the record in a number of ways. First, the ALJ stated that
12  because Plaintiff used meth "during 2007," discontinued treatment in June 2007,
13  and did not return to see her doctor until April of 2008, Dr. Ahmad's 2007 opinion
14  "reflects claimant's level of impairment during a time that she was admittedly still
15  using methampetamine. Although Dr. Ahmad does not directly separate the two
16  issues, claimant's functional limitations at that time cannot be separated from her
17  substance abuse." (A.R. 21.) However, according to her treating physician Dr.
18  Ahmad, Plaintiff remained sober from abusing drugs such as methamphetamine
19  during the times he treated her in 2006 and 2007. (A.R. 613.) Plaintiff did testify
20  that she used meth a couple of times in 2007, which was a relapse as she had been
21  sober since January of 2006. (A.R. 116, 126.) But there was no evidence in the
22  record to suggest that the seven recorded times between December 2006 and June
23  2007 that Plaintiff was seen by Dr. Ahmad that Plaintiff was abusing drugs. As
24  such, the treatment notes from late 2006 and the first half of 2007 and Dr. Ahmad's
25  March 22, 2007 mental impairment opinion reflected a period in which Plaintiff
26  was sober from drugs for more than a year.[1/] (A.R. 606-612.) Secondly, the ALJ

27
28       1. <u>See</u> DrugFacts: Methamphetamines, National Institute of Drug Abuse, available at
    http://www.drugabuse.gov/publications/drugfacts/methamphetamine ("Chronic methamphetamine abuse
    significantly changes how the brain functions ... Some of these changes persist long after methamphetamine abuse is

misstated the record when he stated the following: "Dr. Ahmad's 2011 opinion is given limited weight as claimant's last documented treatment was in June 2006 and there is therefore no way to evaluate whether the March 2011 opinion is a current assessment or simply based on prior opinions given." (A.R. 22.) Rather, as stated before, Plaintiff received treatment from Dr. Ahmad in late 2006 through mid 2007, was treated at least twice by him in 2008, and resumed consistent treatment with him from February 2010 through at least June 2010. Thus, although the record was presumably incomplete, both Dr. Ahmad's 2010 and 2011 medical opinions detailing Plaintiff's disabilities due to her mental illness should have been given their proper weight as there were some treatment notes supporting the opinions and there wasn't evidence contradicting Dr. Ahmad's diagnoses. Finally, the ALJ mistakenly pointed out that the consultant psychologist Dr. Valette "was of the opinion that the psychometric testing performed during the exam was likely invalid due to malingering and that claimant's reported level of functional abilities and adequate presentation was more indicative of an average range of intellectual functioning." (A.R. 24.) However, Dr. Valette did not state that she was malingering but that more testing would have needed to be done to "rule out malingering." (A.R. 622.)  Dr. Valette did not separate the limitations caused by Plaintiff's drug use from the limitations caused by Plaintiff's other medical issues; he simply concluded that Plaintiff had no mental health issues based on his inconclusive test results. Further testing by Dr. Valette was not done, and the inconclusive test results from Dr. Valette in September 2009 became the main basis by which the ALJ concluded that Plaintiff would not be disabled if she stopped the substance abuse. Thus, after accounting for these errors, the ALJ had little basis to conclude that the functional limitations due to her mental illness were mainly due to her substance abuse disorder. Plaintiff's brief drug relapses in 2007

stopped. Reversal of some of the changes, however, may be observed after sustained periods of abstinence (e.g., more than one year)").

(a couple times), in late 2008 to early 2009, and in September 2009 (her last documented use) should have been treated as secondary to Plaintiff's primary problem of depression and bipolar disorder, as Dr. Ahmad and Stephen Papaleo, her psychologist, had done in their progress reports.[2/]

Accordingly, this Court finds that when the record as a whole is reviewed, substantial evidence does not support the ALJ's decision that Plaintiff's methamphetamine use was a contributing factor material to her disability. The ALJ committed legal error by failing to provide specific and legitimate reasons, based upon substantial evidence, in rejecting the opinions of Plaintiff's treating doctors, who indicated that Plaintiff was disabled at the time of the application date of October 6, 2006.

## VI.

## CONCLUSION

For the reasons set forth above, this Court finds that because the ALJ's decision was not supported by substantial evidence, the case should be remanded for a new decision consistent with this Report and Recommendation. The Court recommends **GRANTING in part** Plaintiff's Motion for Summary Judgment and

---

2. The instant case is similar to cases in which courts have found a lack of substantial evidence in the record to support the ALJ's finding that drug or alcohol use is a contributing factor material to disability. See, e.g., Salazar v. Barnhart, 468 F.3d 615, 622-26 (10th Cir. 2006) (holding ALJ's determination that claimant's drug and alcohol addiction was contributing factor material to her mental-impairment disability was not supported by substantial evidence where physicians cited by government never assessed whether claimant's mental disorders were disabling in absence of her addictions); McGoffin v. Barnhart, 288 F.3d 1248, 1252-53 (10th Cir. 2002) (holding non-treating physician's assessment that claimant's mental disorders were not disabling absent her substance abuse did not constitute substantial evidence because physician examined claimant only once, over a year prior to administrative hearing, and did not express an opinion on nature of claimant's cognitive abilities were she to be in an independent work environment).

**DENYING** Defendant's Cross-Motion for Summary Judgment.

     This Report and Recommendation is submitted to the Honorable Thomas Whelan, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before **March 21, 2014**. The document should be captioned "Objections to Report and Recommendation." Any reply to the Objections shall be served and filed on or before **March 28, 2014**. The parties are advised that failure to file objections within the specific time may waive the right to appeal the district court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

     **IT IS SO ORDERED**.

DATE:  March 7, 2014

Peter C. Lewis
U.S. Magistrate Judge
United States District Court

12cv328 W (PCL)